

# United States Bankruptcy Court
# for the District of Oregon

Thomas M. Renn, Judge
Jonni Paulsen, Judicial Assistant
Andrea Breinholt, Law Clerk

405 East Eighth Avenue, Suite 2600
Eugene, Oregon 97401

(541) 431-4050
FAX: (541) 431-4047

July 16, 2020

*VIA ECF ONLY*

Ms. Natalie C. Scott
The Scott Law Group, LLP
POB 70422
Springfield, OR 97475

Mr. Keith Y. Boyd
The Law Offices of Keith Y. Boyd
724 S. Central Ave. #106
Medford, OR 97501

RE:  Ricky Robert Smith; Case No. 09-64178-tmr7
      Ruling on laches defense raised by Western Mercantile Agency, Inc.

Counsel:

     Debtor Ricky Smith filed his chapter 7 case on August 4, 2009. The court entered his discharge on November 8, 2010, and the case closed on March 20, 2013, three-and-a-half years after he filed it. On December 13, 2019, Debtor moved to reopen the case to bring the instant Motion to Avoid Judicial Lien, filed December 17, 2019, as Doc. #49. In the motion, Debtor seeks to avoid two judgment liens held by Western Mercantile Agency, Inc. (WMA), against his interest in a jointly owned residence located at 93919 Autumn Lane in Coos Bay, Oregon.

     WMA filed a timely response to the motion including an assertion that Debtor "intentionally and unreasonably delayed in bringing this motion for over 10 years." As such, WMA asserts the equitable defense of laches. At the March 5, 2020, hearing, the parties agreed it would be best to address the laches issue as a preliminary matter before moving on to the remaining lien avoidance issues. Although the parties agreed they would submit their arguments on stipulated facts (later filed as Doc. #61), in their filings they each identified unresolved factual issues and agreed that each party would have one witness testify. Based on agreement of the parties, we took evidence and argument on the laches issue. The issue is ready for a ruling.

     The parties agree that a laches defense can apply to a motion to avoid a lien under 11 U.S.C. § 522(f). They are correct. "Laches is an equitable affirmative defense available for

actions that do not have a specific applicable statute of limitations." *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1125 (9th Cir. 2006). As the Ninth Circuit earlier explained, "[T]he equitable doctrine of laches . . . is a relevant and necessary doctrine in the bankruptcy context." *Beaty v. Selinger (In re Beaty)*, 306 F.3d 914, 922 (9th Cir. 2002) (internal citations omitted) (laches applied to creditor's claim of nondischargeability, notwithstanding that FRBP 4007(b) allowed such claim to be brought "at any time"). Numerous bankruptcy courts have applied laches in the context of motions to avoid judicial liens under § 522. *See In re Oglesby*, 519 B.R. 699, 705 (Bankr. N.D. Ohio 2014) (debtor's 4.5-month delay was unreasonable); and *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993) (two years after the case closed was too long).

Although Debtor, as the movant, has the burden of proving the ultimate issue of avoidance under § 522, WMA has the burden of proving its affirmative defense. The elements of laches are only two: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Beaty*, 306 F.3d at 926, (citing *Kansas v. Colorado*, 514 U.S. 673, 687 (1995)). "[L]aches is not a doctrine concerned solely with timing. Rather, it is primarily concerned with prejudice." *Beaty*, 306 F.3d at 924.

The Ninth Circuit BAP has stated that "the bare fact of delay creates a rebuttable presumption of prejudice" in evaluating laches. *Shook v. McDonald (In re Shook)*, 278 B.R. 815, 830 (9th Cir. BAP 2002) (citing *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975). Here, Debtor's delay runs over ten years from the bankruptcy filing date and nearly seven years after the case closing.

*Analysis:*

    1. Debtor's lack of diligence.

Debtor concedes in his response that he knew he could seek to avoid the liens when his case was pending. Although he argues that he "did not have the funds to do so," I don't find that credible where we have a simple form motion, such motions are routine, and Debtor already had counsel to represent him in the adversary. His assertion that "he did not believe the Creditor would ever take action to sell the home" does not help in showing diligence in pursuing the lien avoidance. WMA's active pursuit of the original judgment and its filing of the adversary complaint show that WMA was active, and Debtor should have addressed the lien claims.

Debtor argues that we should consider delay through the framework of a 10-year statute of limitations, because a lien avoidance motion is analogous to actions to quiet title, defense of possession by equitable title, and actions to recover real property. He cites no authority for the comparison of § 522 claims to these state law claims. Nor does he address the body of bankruptcy-specific holdings that delays of a few months and a few years may make a lien avoidance motion subject to a laches defense.

Citing *Mattson v. Commercial Credit Business Loans, Inc.*, 301 Or. 407 (1986), Debtor identifies another element to laches: knowledge of the right to bring the motion. I disagree with applying Oregon law, because federal law applies in bankruptcy, but knowledge of the right could be a component of diligence. Based on the testimony and documents filed in the

bankruptcy case, I find that Debtor knew he had the right to bring the motion and was not diligent in doing so. His statement of intention, filed with his petition, asserted his intent to avoid certain liens, including the Les Schwab lien purchased by WMA, against his residence. Signing those statements indicates knowledge of his rights.

Under the circumstances and given the considerable delay (10.5 years since case filing and 7 years since case closure) and Debtor's lack of diligence in pursuing the motion, WMA has met its burden on this element.

    2. Prejudice to WMA.

In support of their positions, both parties rely on the *Ricks* case in identifying the following factors supporting a finding of prejudice:

    (1)   vigor with which the … creditor pursued the debtor prior to the filing of the bankruptcy petition;
    (2)   communication of positions by and between debtor and … creditor after filing the petition and prior to discharge;
    (3)   motivating cause of failure to file lien avoidance complaint prior to discharge;
    (4)   length of time between discharge and filing of the lien avoidance complaint;
    (5)   reasons for delay in filing lien avoidance complaint;
    (6)   prejudice to the … creditor; and
    (7)   good faith, or lack thereof, of the creditor.

*In re Ricks,* 89 B.R. 73, 76 (9th Cir. BAP 1988). WMA asserts five main points for prejudice and I find the following:

    a. Loss of priority. Debtor's Motion assumes that WMA's liens are junior to the mortgage Debtor had with Countrywide at the time of filing. Creditor argues that Debtor's 2017 refinance, to which WMA had no knowledge, had the legal effect of elevating its liens to first and second position. To allow the Motion as framed by Debtor would significantly prejudice WMA in its arguments about priority.

    b. Legal and realtor costs of maintaining its liens and pursuing them to the entry of the Order Allowing Sale of Real Property on Execution entered August 23, 2019. Ms. Gallino's Declaration lists $14,681 in legal costs to date, and $430 in additional costs. While WMA would have still incurred a portion of these costs in preserving its liens on Debtor's other real property, the costs related to the Autumn Lane property would not have been incurred had Debtor timely filed his motion.

    c. Additional costs. WMA has incurred legal expenses in defending this motion and may incur additional costs if it is required to litigate the priority issue caused by Debtor's 2017 refinance. Additionally, although Ms. Gallino's hearsay statement about the realtor's $3,150 estimate for proving the value of the property in 2009 does not establish that this is the actual cost, I find that valuing the property after so much time has passed will be more difficult and costly.

      d. Adversary proceeding. WMA claims it voluntarily dismissed its nondischargeability complaint on the belief that Debtor would not seek to avoid its lien. Ms. Gallino's testimony repeated this assertion, and I see no reason to discredit it.

      e. Deterioration of evidence. In his Declaration, Debtor states "I can recall some of the events relevant to evenings relating to the filing of my bankruptcy in 2009, but much of what I knew at the time is gone" due to his numerous intervening surgeries and impaired long-term memory.

      Based on the testimony, I find support for these additional elements under *Ricks*:

      f. Vigor with which creditor pursued Debtor before the bankruptcy filing. WMA obtained a judgment against Debtor three weeks prior to the bankruptcy filing. This shows vigor in pursuit.

      g. Communication of positions while the case was pending. The docket in the adversary proceeding, the resulting stipulated judgment of dismissal, and the parties' pleadings in the context of this proceeding all indicate that the parties communicated about the dischargeability issues. WMA's representative, Ms. Gallino, says dismissal was based in part on "recognition that Creditor's liens would remain attached to the three properties." Further, WMA argues that Debtor's real property on Stiam Smith Lane was sold while the chapter 7 case was pending and that proceeds were paid to WMA in exchange for release of its lien on that property. This shows knowledge of WMA's lien and communication between the parties about the lien.

      h. Length of time between discharge and proposed lien avoidance. Over 9 years have passed.

      i. Good faith on part of creditor. WMA asserts that it has acted in good faith and there's no evidence to the contrary.

*Other issues:*

      In discussing the Oregon state law element of "knowledge of the right to bring the motion," Debtor states "Creditor had the same knowledge as the Debtor and took no action to enforce its lien for many years." Although Debtor cites *Ricks* for the notion that a creditor cannot "sit back hoping a debtor will not discover a mistake in scheduling an obviously avoidable lien," Debtor was not "mistaken" in this case. Moreover, none of the factors require that we look at how diligently WMA pursued its lien postpetition. Even so, creditor took steps to renew the judgments (see Stipulated Statement of Facts ¶ 2; Exhibit #2).

      Debtor also argues that we should apply Judge Radcliffe's approach in *In re Goude,* 201 B.R. 275 (Bankr. D. Or. 1996) and refuse to apply laches where all parties had knowledge of all relevant facts. His reliance on *Goude*, however, is misplaced. *Goude* was a chapter 13 case involving a trustee's motion to dismiss the case on feasibility grounds where the debtor was nearing the end of his 5-year plan and hadn't paid all of his priority debt. *Id*. at 276. Debtor tried to argue that his plan was confirmed without objection, that the trustee had knowledge of all the relevant facts, and that the laches doctrine should apply to bar trustee's motion to dismiss so late

in the case. *Id.* The case is legally and factually distinguishable for obvious reasons. Moreover, the *Goude* opinion simply references the court's oral ruling from a previous hearing. It does not outline any analysis on the laches issue, and Debtor's citation to that opinion is unhelpful at best.

Even under these circumstances, Debtor suggests that I should require reimbursement of expenses for any prejudice to WMArather than apply laches. There does not appear to be any controlling caselaw requiring such reimbursement, and the cases cited by the parties discuss reimbursement as a matter of the court's discretion. "[Some] courts exercise their discretion to consider whether the debtor should be required to reimburse the creditor for expenses it incurred during the period of delay as a condition of reopening the bankruptcy case to pursue lien avoidance proceedings, instead of barring reopening altogether." *In re Oglesby*, 519 B.R. 699, 706 (Bankr. N.D. Ohio 2014).

Under the facts of this case, I do not think that reimbursement is appropriate. Given the prejudice described above and that WMA's priority position has changed, reimbursement would be impractical. In this case, there's too much water under the bridge and too many difficult-to-quantify factors, including WMA's agreement to dismiss the adversary allegedly in reliance on Debtor not avoiding its lien.

*Conclusion*:

All of the factors under *Beaty* and *Ricks* support findings that Debtor was not diligent in pursuing the matter, had all relevant information at the time he filed his case 10 years ago, and has unreasonably delayed in bringing his avoidance claim. For the reasons outlined above, I also find that WMA is has been significantly prejudiced by the delay. Therefore, I hold that the avoidance claim is subject to a laches defense and will enter a separate order denying Debtor's motion. Where "a chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period," *Beaty*, 306 F.3d at 922, application of laches in this case is appropriate when considering a motion that debtor could have asserted over 10 years ago.

Very truly yours,

THOMAS M. RENN
Bankruptcy Judge

TMR:jrp